1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LADELLE D. JACKSON,

11          Plaintiff,              No. CIV S-02-2756 FCD DAD P

12      vs.

13   D.L. RUNNELLS, et al.,

14          Defendants.          FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief pursuant to 42 U.S.C. § 1983.  The matter is before the court on the defendants' motions

18   for summary judgment.  Plaintiff opposes both motions.

19                          BACKGROUND

20          Plaintiff is confined in High Desert State Prison and was confined there when he

21   filed this action on December 30, 2002.  Plaintiff alleges as follows:  he sustained a foot injury

22   while playing basketball at the prison on January 13, 2002; defendant Doctor Mericle refused to

23   treat his injury; defendant N. Baron, Chief Medical Officer, failed to intervene when notified of

24   Doctor Mericle's refusal to provide treatment.  The court determined that plaintiff's complaint

25   states cognizable claims for relief against defendants Mericle and Baron pursuant to 42 U.S.C. §

26   1983 and 28 U.S.C. § 1915A(b).

1

1  In due course, defendants were served.  Defendant Mericle filed an answer on

2  May 23, 2003.  Defendant Baron filed a Rule 12(b) motion to dismiss for failure to exhaust

3  administrative remedies prior to bringing the action.  The motion was denied on August 26,

4  2003, and defendant Baron filed his answer on September 5, 2003.

5  Pursuant to the scheduling order filed March 1, 2004, discovery closed on August

6  27, 2004, and the time for filing pretrial motions expired on October 29, 2004.  Each defendant

7  filed a timely motion for summary judgment.  Plaintiff was granted three extensions of time to

8  oppose the motions.  The dates set for pretrial conference and jury trial have been vacated.

9  STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

10  Summary judgment is appropriate when it is demonstrated that there exists "no

11  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

12  matter of law."  Fed. R. Civ. P. 56(c).  The moving party

13
14
15

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

16  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

17  "[W]here the nonmoving party will bear the burden of proof at trial on a

18  dispositive issue, a summary judgment motion may properly be made in reliance solely on the

19  'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Summary

20  judgment should be entered, after adequate time for discovery and upon motion, against a party

21  who fails to make a showing sufficient to establish the existence of an element essential to that

22  party's case and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A]

23  complete failure of proof concerning an essential element of the nonmoving party's case

24  necessarily renders all other facts immaterial."  Id.  Summary judgment should be granted "so

25  long as whatever is before the district court demonstrates that the standard for entry of summary

26  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish that a genuine issue as to any material fact does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material in support of the contention that a dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The party opposing summary judgment must show that any fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In trying to establish the existence of a factual dispute, the party opposing summary judgment need not establish a material issue of fact conclusively in his or her favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

The evidence of the party opposing summary judgment is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587.  Inferences will not be drawn out of the air, however; it is the opposing party's obligation to produce a factual predicate from which an inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  The opposing party "must do more than simply show that there is some

1  metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not

2  lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

3  Matsushita, 475 U.S. at 587 (citation omitted).

4     On March 3, 2003, the court advised plaintiff of the requirements for opposing a

5  motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

6  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

7  Cir. 1988).

8  ANALYSIS

9  I.  Legal Standards Applicable to Plaintiff's Civil Rights Claims

10     The Civil Rights Act under which plaintiff is proceeding provides that

11    [e]very person who, under color of [state law] . . . subjects, or
  causes to be subjected, any citizen of the United States . . . to the

12    deprivation of any rights, privileges, or immunities secured by the
  Constitution . . . shall be liable to the party injured in an action at

13    law, suit in equity, or other proper proceeding for redress.

14  42 U.S.C. § 1983.  The statute requires an actual connection or link between the actions of each

15  defendant and the deprivation alleged to have been suffered by the plaintiff.  See Monell v.

16  Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).

17     "A person 'subjects' another to the deprivation of a constitutional right, within the

18  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

19  omits to perform an act which he is legally required to do that causes the deprivation of which

20  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Supervisory

21  personnel are generally not liable under § 1983 for the actions of their employees under a theory

22  of respondeat superior and therefore, when a named defendant holds a supervisorial position, the

23  causal link between the defendant and the claimed constitutional violation must be specifically

24  alleged and proved.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld,

25  589 F.2d 438, 441 (9th Cir. 1978).

26  /////

1    A prisoner's claim of inadequate medical care arises under the Eighth

2    Amendment.  The unnecessary and wanton infliction of pain constitutes cruel and unusual

3    punishment forbidden by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

4    Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

5    In order to prevail on an action alleging cruel and unusual punishment, a prisoner must allege and

6    prove that objectively he or she suffered a sufficiently serious deprivation and that subjectively

7    prison officials acted with deliberate indifference in allowing or causing the deprivation to occur.

8    Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

9    Where a prisoner's Eighth Amendment claim is one of inadequate medical care,

10   the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate

11   indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. at 106.  Such a claim has

12   two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's

13   response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991).  A medical

14   need is serious "if the failure to treat the prisoner's condition could result in further significant

15   injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin, 974 F.2d at 1059 (quoting

16   Estelle v. Gamble, 429 U.S. at 104).  Indications of a serious medical need include "the presence

17   of a medical condition that significantly affects an individual's daily activities."  Id. at 1059-60.

18   By establishing the existence of a serious medical need, a prisoner satisfies the objective

19   requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834

20   (1994).

21   If a prisoner establishes the existence of a serious medical need, he or she must

22   then show that prison officials responded to the serious medical need with deliberate

23   indifference.  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when

24   prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown

25   by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d

26   390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been

1   abridged with regard to medical care, however, "the indifference to his medical needs must be

2   substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

3   cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing

4   Estelle, 429 U.S. at 105-06). Deliberate indifference is "a state of mind more blameworthy than

5   negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or

6   safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

7          Delays in providing medical care may manifest deliberate indifference. Estelle,

8   429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay, a plaintiff

9   must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994)

10  (per curiam); McGuckin v. Smith, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335

11  (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd.

12  of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

13         Mere differences of opinion between a prisoner and prison medical staff as to

14  proper medical care do not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330,

15  332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662

16  F.2d 1337, 1334 (9th Cir. 1981).

17  II.  Defendant Mericle's Motion for Summary Judgment

18         A.  Defendant's Arguments and Evidence

19         Defendant Mericle asserts that there are no triable issues of material fact with

20  regard to plaintiff's claims and defendant is entitled to judgment as a matter of law. Defendant

21  contends that plaintiff has not offered any evidence that defendant Mericle proximately caused

22  plaintiff's injuries and was deliberately indifferent in the medical treatment he provided for

23  plaintiff. Defendant Mericle relies on his own declaration, selected medical records, and

24  plaintiff's deposition testimony. With his reply to plaintiff's opposition, defendant Mericle

25  submitted a second declaration and an additional medical record.

26  /////

1    Defendant's evidence appears to establish the following facts:  on February 11,

2  2002, plaintiff injured his right foot playing basketball; plaintiff went to the prison clinic, where

3  he was seen by a registered nurse and a medical technical assistant; the nurse examined

4  plaintiff's right foot and toes and noted that the toes were swelling and purplish in color, with

5  ecchymosis throughout; the nurse taped plaintiff's toes together with gauze between the toes and

6  instructed plaintiff to stay off the foot and keep it elevated; Motrin was prescribed; on February

7  15, 2002, plaintiff was seen by Dr. Mericle; Dr. Mericle was briefed by the nurse before he

8  examined plaintiff's foot; while examining plaintiff's foot, Dr. Mericle asked plaintiff questions

9  about the circumstances of the injury; Dr. Mericle removed the bandages and asked plaintiff to

10  move the foot; plaintiff stated he was unable to move it because he was in too much pain; Dr.

11  Mericle's impression was that one or two of plaintiff's right toes were fractured but not

12  significantly displaced; based on a working diagnosis of a fracture/contusion to the toes, Dr.

13  Mericle rewrapped the foot and scheduled a February 25, 2002 follow-up appointment so that

14  plaintiff's toes would have an opportunity to become less painful; Dr. Mericle confirmed that

15  plaintiff was not scheduled to work for another two weeks and prescribed ibuprofen for pain

16  management; it is Dr. Mericle's opinion that his treatment of plaintiff met the standard of care

17  for a generalist physician proceeding on a diagnosis of fracture/contusion to the toes; Dr. Mericle

18  believes that, if he had seen plaintiff for the scheduled follow-up appointment ten days later, he

19  would have noted that the condition of plaintiff's toes was largely unchanged, would therefore

20  have ordered x-rays, and, upon confirming a dislocation, would have treated that condition; Dr.

21  Mericle was transferred from the yard prior to the next scheduled appointment with plaintiff;

22  plaintiff was no longer Dr. Mericle's patient on the date of the February 25, 2002 appointment,

23  and no other doctor took the appointment; on March 14, 2002, plaintiff was seen by Dr. Watson,

24  who referred plaintiff to a specialty clinic for x-ray examination; the x-ray revealed that plaintiff

25  had a dislocated right third toe PIP joint; plaintiff required and received surgery on the dislocated

26  toe; the treatment regimen for a contused toe and a not obviously displaced broken toe is

identical; it is speculative to say that a different course of treatment on February 15, 2002, would have resulted in a different outcome; it is also speculative to say that treatment for a dislocated toe on February 15, 2002, rather than on March 14, 2002, would have resulted in a different outcome.

Defendant Mericle argues that causation is an element plaintiff must prove in order to obtain relief under § 1983, plaintiff cannot prove his single consultation with defendant Mericle was a proximate cause of his injuries, and defendant's actions cannot be shown through any competent evidence to have exacerbated plaintiff's condition.  Defendant Mericle contends that his evolving diagnosis and treatment of plaintiff's toe was dependent on a follow-up appointment to assess plaintiff's progress and that the lack of an opportunity to examine plaintiff ten days later, as scheduled, precluded him from sending plaintiff for x-rays and treating him as Dr. Watson did when he examined plaintiff's toe seventeen days after the date of the follow-up appointment scheduled by defendant Mericle.  On these facts, defendant Mericle asserts that plaintiff cannot meet his burden of production with regard to causation.

Defendant Mericle also argues that plaintiff's disagreement with the treatment of plaintiff's medical condition on February 15, 2002, is based solely on speculation that the outcome would have been different if defendant Mericle had treated plaintiff differently on February 15, 2002.  Defendant notes that even if he had treated plaintiff for a dislocated toe on February 15, without the benefit of the scheduled follow-up appointment, it is pure speculation to assert that the outcome would have been any different.

Defendant Mericle contends that, even if plaintiff could prove that the defendant's single treatment of plaintiff was the proximate cause of plaintiff's injuries, plaintiff cannot establish that defendant Mericle was deliberately indifferent to plaintiff's serious medical needs. Defendant Mericle asserts that he did not consciously disregard a risk of substantial harm and cannot be found to have deliberately inflicted unnecessary and wanton infliction of pain merely because he did not take the actions on February 15, 2002, that Dr. Watson took 27 days later.

8

1        Upon consideration of defendant Mericle's arguments and evidence, the

2   undersigned finds that the defendant has carried his initial burden of pointing to evidence that

3   demonstrates there is no genuine issue as to any material fact concerning his treatment of

4   plaintiff.  Defendant Mericle's evidence supports his contention that he is entitled to judgment as

5   a matter of law on plaintiff's Eighth Amendment claim.  Because defendant Mericle has borne

6   his initial responsibility, the burden shifts to plaintiff to establish the existence of a genuine

7   dispute of material fact that precludes summary judgment.

8        B.  <u>Plaintiff's Arguments and Evidence</u>

9        A party opposing a motion for summary judgment is required to reproduce the

10  facts contained in the moving party's statement of undisputed facts and admit the facts that are

11  undisputed and deny those that are disputed, including with each denial a citation to evidentiary

12  documents relied upon in support of the denial.  Local Rule 56-260(b).  The opposing party may

13  also file a concise statement of disputed facts, citing the source thereof in the record, that

14  contains additional material facts as to which there is a genuine issue precluding summary

15  judgment.  <u>Id.</u>

16       The pro se plaintiff has not complied with the requirements of Local Rule 56-

17  260(b).  Instead of reproducing all facts contained in defendant Mericle's statement of undisputed

18  facts and admitting or denying each one, plaintiff has presented one document that contains his

19  own version of undisputed material facts and a second document that plaintiff describes as a

20  supplemental statement of disputed facts.

21       The first of these two documents contains seven paragraphs that correspond to

22  Nos. 1 through 7 of defendant Mericle's fourteen undisputed facts.  For each of these seven

23  entries plaintiff cites the same documents cited by defendant.  Plaintiff has accurately reproduced

24  Nos. 1 through 4, and the court finds those facts undisputed.  Plaintiff has accurately reproduced

25  only portions of Nos. 5, 6, and 7.  To the extent that Nos. 5, 6, and 7 have been accurately

26  reproduced, the undersigned finds those facts undisputed.

In No. 5, plaintiff disputes by omission that he was unassigned for five days after his visit to the yard clinic on February 11, 2002. Plaintiff cites no evidence to the contrary. Assuming for the sake of argument that there is a dispute regarding plaintiff's assignment status on the day he was treated in the yard clinic, the undersigned finds that the issue is not material to plaintiff's claims against defendant Mericle.

In No. 6, plaintiff disputes by omission that defendant Mericle checked plaintiff's medical records, asked questions of plaintiff, scheduled a follow-up medical appointment, and allowed plaintiff to continue managing his pain with Tylenol for the next 30 days. Defendant Mericle has offered a declaration in which he states that he checked plaintiff's medical records during the appointment and scheduled a follow-up medical appointment. (Mericle Decl. ¶¶ 6 & 8.) Plaintiff cites no evidence to show that defendant Mericle did not check plaintiff's medical records. Plaintiff's own deposition testimony establishes that defendant Mericle asked questions of plaintiff during the examination, such as how plaintiff hurt his foot, when the injury happened, and how it happened. (Jackson Dep. at 21:8-10.) Plaintiff's own testimony also establishes that defendant Mericle allowed plaintiff to continue taking Tylenol for pain for the next 30 days and scheduled a follow-up appointment. (Id. at 22:2-25 & 23:1-6.) Plaintiff has cited no evidence that demonstrates the existence of a dispute with regard to defendant's undisputed fact No. 6.

In No. 7, plaintiff disputes that the x-ray examination on March 14, 2002, revealed that plaintiff had a dislocated third PIP joint. He asserts that the x-ray showed "dislocation of his second and third PIP joints." Medical progress notes recorded on April 9, 2002, and April 10, 2002, indicate "dislocation R 3rd toe at PIP" and "dislocation of 3rd digit R foot." (Pl.'s Supplemental Separate Statement of Disputed Facts, Ex. A-2.) The podiatric evaluation dated April 23, 2002, contains references to plaintiff's second and third toes but the only indication of dislocation concerns the third toe on his right foot. (Id., Ex. B-1, at 2.) The radiology report dated March 20, 2002, records a finding of "dislocation of the third PIP joint" and the impression is "Dislocation of the third PIP joint." (Id., Ex. C.) Plaintiff has not demonstrated that the third,

1   or middle, toe has more than one PIP joint and, if so, that more than one of those joints was

2   dislocated.  Moreover, if there is a dispute in this regard, plaintiff has failed to show that the

3   dispute is material to his claims against defendant Mericle.

4          In his supplemental separate statement of disputed facts, plaintiff disputes

5   portions of defendant Mericle's undisputed facts 8 through 14.  In undisputed fact No. 8,

6   defendant states that he had a single appointment with plaintiff and scheduled a follow-up

7   appointment for February 25 but was transferred prior to that date, as a result of which plaintiff

8   was no longer his patient on February 25.  Plaintiff does not dispute that he had a single

9   appointment with defendant Mericle or that defendant Mericle was transferred prior to February

10  25.  Plaintiff asserts, however, that "Dr. Mericle did not schedule a follow-up appointment for

11  plaintiff."  Plaintiff himself has testified otherwise.  (Jackson Dep. at 22:2-25 & 23:1-3.)  In

12  support of his contention that there is a genuine dispute of fact, plaintiff cites the third-level

13  decision on a grievance he filed against defendant Mericle.  (Pl.'s Supplemental Separate

14  Statement of Disputed Facts, Ex. A-1.)

15         Plaintiff argues that the third-level appeal decision proves that defendant Mericle

16  "was found to have been deliberate and indifferent to plaintiff's medical needs."  The decision

17  states that plaintiff's appeal concerns a claim that plaintiff was harassed by medical staff, an

18  allegation of staff misconduct by Doctor Mericle, and contentions that Doctor Mericle failed to

19  provide plaintiff with appropriate medical treatment and care and was unprofessional and

20  negligent.  The decision notes that a fact-finding investigation was conducted by the institution

21  and the allegations of staff misconduct were sustained by institution staff.  The decision offers no

22  details concerning the misconduct that was substantiated and does not address any aspect of the

23  medical care provided by defendant Mericle.  This document does not create a dispute of fact

24  with regard to whether defendant Mericle scheduled a follow-up appointment.  Nor does the

25  document support plaintiff's legal conclusion concerning deliberate indifference to a serious

26  medical need.

1    Although plaintiff has not cited other documents related to his appeal, defendant

2    Baron previously submitted a copy of the appeal in support of his motion to dismiss for failure to

3    exhaust administrative remedies.  (See Decl. of Danette Jackson filed May 30, 2003, in Supp. of

4    Def. Baron's Mot. to Dismiss, Ex. A-2.)  In the grievance submitted on May 1, 2002, plaintiff

5    states that defendant Mericle told him there was nothing wrong with his toes, despite the purplish

6    color and swelling, and said he would see him again in 30 days.  Plaintiff states that he now

7    requires surgery because of defendant Mericle's gross negligence, disregard for plaintiff's health,

8    failure to do his job correctly, decision to "blow off" the injury as a simple bruise, willful and

9    unjust disregard for plaintiff's health, failure to diagnose correctly, callous disregard, and need

10   for re-training in assessing injuries.  At the first formal level, plaintiff was interviewed by Doctor

11   Roche, Acting Chief Physician and Surgeon.  Staff were also interviewed.  Defendant Baron,

12   Chief Medical Officer, determined that "allegations by you in regard to the claim of misconduct

13   on the part of Dr. Mericle can be substantiated."  Like the third-level decision, neither the first-

14   level nor the second-level decision sheds light on the misconduct substantiated by the Chief

15   Medical Officer's review of plaintiff's appeal and supporting documents, plaintiff's medical file

16   and the interviews that were conducted.  The appeal, taken as a whole, does not support

17   plaintiff's legal conclusion concerning deliberate indifference to a serious medical need.

18   With regard to defendant's undisputed fact No. 9, plaintiff does not dispute

19   defendant Mericle's description of the condition of plaintiff's foot when defendant examined it.

20   He disputes only defendant Mericle's statement that he confirmed that plaintiff was not

21   scheduled to work for another two weeks.  Plaintiff asserts that defendant Mericle "did not

22   confirm that I was not scheduled to work for another two-weeks as during this time the entire B-

23   facility yard was on lockdown status."  Plaintiff cites his declaration and Exhibit A-2.  In his

24   declaration, he states that he "was not scheduled to work as B-facility yard was on lock down

25   status."  Exhibit A-2 is a copy of a medical record that contains a typed progress note dated

26   February 15, 2002.  The entry includes the notation "He doesn't work for 2 weeks so don't need

to worry about lay-in."  Plaintiff's evidence appears to support defendant Mericle's notation that plaintiff would not work for two weeks, and the notation is consistent with defendant Mericle's argument and evidence that he scheduled plaintiff for a follow-up appointment in ten days. Assuming for the sake of argument that there is a dispute as to whether the defendant confirmed plaintiff's work schedule, the undersigned finds that plaintiff has failed to demonstrate that the dispute is material to his claim against defendant Mericle.

In undisputed fact No. 10, defendant states that he wrote notes during the appointment with plaintiff and scheduled a follow-up appointment in ten days.  Plaintiff states that defendant Mericle "has never written any notes concerning any follow-up treatment for plaintiff."  Plaintiff mischaracterizes defendant's undisputed fact No. 10.  Moreover, plaintiff has testified that defendant Mericle took note of everything he saw and told plaintiff he would call him back for a follow-up appointment.  (Jackson Dep. 21:23-25, 22:21-25 & 23:1.)  In support of his assertion of a disputed fact, plaintiff cites the medical report of injury dated February 14, 2002.  (Pl.'s Supplemental Separate Statement of Disputed Facts, Ex. B.)  This document does not support plaintiff's assertion.  The section titled "Comments of Medical Officer" includes the entry "F/U [with] me in AM."  The section titled "Disposition" includes the entry "RT Y [with] F/U in AM," which appears to mean "return to yard with follow up in the morning."  Aside from obvious notes concerning follow-up treatment on this form, defendant has offered evidence that he wrote a note concerning follow-up treatment in ten days.  On a page of physician's orders for the dates of February 14, February 15, and March 11, 2002, defendant Mericle's entry for February 15, 2002, appearing in the middle of the page, reads "F/U 10 dys," with the adjacent notation "reducat."  (Def. Mericle's Reply Brief, Mericle Decl. dated Dec. 10, 2004, & Ex. A.) This medical record demonstrates that defendant Mericle ordered follow up care for plaintiff in ten days.  Plaintiff has failed to demonstrate the existence of a genuine dispute of fact on the issue of whether defendant Mericle wrote any notes concerning follow-up treatment for plaintiff.

/////

1    In response to defendant Mericle's undisputed fact No. 11 concerning the

2   treatment he would have provided had he diagnosed a dislocated toe instead of a toe that was

3   contused or broken but not obviously displaced, plaintiff asserts that he informed the doctor of

4   possible fractures to his right foot toes and begged to be sent for x-rays but defendant Mericle

5   "denied there was anything wrong" with his right foot "despite all the tell-tale signs."  Plaintiff

6   also asserts that, if defendant Mericle had scheduled plaintiff for a follow-up evaluation and

7   defendant Mericle was unavailable, "another yard doctor would have been provided."  Plaintiff

8   cites his complaint, his declaration, and Exhibits B-1 and C.  Plaintiff does not cite specific pages

9   in his complaint, but the undersigned finds allegations that (1) defendant Mericle examined

10  plaintiff's foot and told plaintiff his toes were slightly swollen and there was a little discoloration

11  but he would be fine, (2) plaintiff "requested to have an x-ray exam done on his foot to determine

12  if there were any broken bones," (3) the defendant "stated there was nothing wrong and that

13  plaintiff would be fine in a couple of days."  (Compl., Attach. at 2.)  Exhibit B-1 consists of two

14  pages from plaintiff's medical records.  The first page of the exhibit is the second page of a

15  podiatric evaluation dated April 23, 2002.  The second page consists of progress notes dated June

16  19, 2002, concerning plaintiff's surgery.  Exhibit C is a copy of the radiology record showing a

17  dislocation of plaintiff's third PIP joint but not identifying a definite fracture.  Plaintiff has failed

18  to demonstrate the existence of a genuine dispute of fact regarding the treatment defendant

19  Mericle would have provided had he diagnosed a dislocated toe instead of contusion and possible

20  fractures.  Nor do plaintiff's documents demonstrate the existence of a genuine dispute of fact

21  regarding the defendant's decision not to send plaintiff to the specialty clinic for an x-ray on

22  February 15.  The documents cited by plaintiff offer no support for his statement concerning yard

23  doctors taking appointments scheduled by other doctors.

24    With regard to defendant's undisputed fact No. 12 concerning the standard of

25  care, plaintiff asserts that defendant's failure to order x-rays upon noting the state of plaintiff's

26  foot did not meet the basic standard of medical care.  Plaintiff cites only the medical report of

injury.  (Pl.'s Supplemental Separate Statement of Disputed Facts, Ex. B.)  The medical report does not address standards of medical care and does not create a dispute of fact with regard to the defendant doctor's statement that his examination, working diagnosis of fracture/contusion, prescription for ibuprofen, and scheduling of a follow-up appointment in ten days met the standard of care for a generalist physician.

With regard to defendant's undisputed fact No. 13 concerning the speculative nature of plaintiff's claim, plaintiff asserts that if he had been referred for x-rays earlier he would not have been suffering excruciating pain five months after his injury.  Plaintiff cites the allegations of his complaint concerning care received in April and June 2002 and difficulty obtaining pain medication after surgery, the radiology report in March 2002, and plaintiff's declaration that defendant Mericle's actions, inactions, and delays directly contributed to the excruciating pain he was suffering five months after he injured his foot.  (Compl. ¶¶ 11 & 13; Pl.'s Supplemental Separate Statement of Disputed Facts, Attached Decl. ¶ 12 & Ex. C.) Plaintiff has not demonstrated that he has medical expertise and has not offered competent medical evidence to support his assertion that defendant Mericle's decision to see plaintiff again in ten days caused plaintiff to suffer five months of unnecessary pain.  Nor does plaintiff's evidence create a genuine issue of material fact regarding the speculative nature of his claim.

With regard to defendant's undisputed fact No. 14, also concerning the speculative nature of plaintiff's claim, plaintiff asserts that after the x-ray was taken in March a doctor tried to "pop" his dislocated toes back in place based on his mistaken belief that the injury had occurred three days instead of three weeks earlier.  Plaintiff cites a medical record for March 14, 2002.  (Pl.'s Supplemental Separate Statement of Disputed Facts, Ex. D.)  The record reflects that plaintiff had a single dislocated toe.  According to the physician notes, plaintiff complained that his right foot was stepped on February 11, 2002, he felt no fracture at that time, and eventually an x-ray on March 14, 2002, revealed a dislocated PIP joint on his right middle toe. lidocaine was administered and the physician attempted to adjust the toe because he believed the

1    injury had occurred three days earlier.  Plaintiff has not offered competent medical evidence

2    concerning the likelihood that the attempted adjustment would have been successful in his case if

3    attempted on February 15, 2002, rather than March 14, 2002.  Nor does plaintiff's evidence

4    create a genuine issue of material fact regarding the speculative nature of his claim.

5            C.  Defendant's Reply and Plaintiff's Reply to Reply

6            Defendant argues that plaintiff has not offered admissible evidence in support of

7    his allegations of deliberate indifference and his contention that a single consultation with

8    defendant caused the injuries alleged by plaintiff.  Defendant contends that plaintiff offers no

9    competent evidence that failure to x-ray on an initial diagnosis of bruised or fractured toes is a

10   breach of the standard of care for a general physician, much less an act of deliberate indifference.

11   Defendant sets forth extensive evidentiary objections and argues that the cases cited by plaintiff

12   are inapposite because the seriousness of plaintiff's medical need is not in dispute and this is not

13   a case in which a doctor's order or prescription was not carried out by other persons.

14           In reply, plaintiff reiterates that defendant Mericle acted with deliberate

15   indifference to plaintiff's medical needs by insisting that there was nothing wrong with plaintiff's

16   foot and by failing to order an x-ray of plaintiff's foot despite the seriousness of the injury and

17   plaintiff's repeated requests for x-rays.  Plaintiff admits that his exhibits contain a layperson's

18   conclusions but denies that the exhibits constitute hearsay and contends that "all exhibits contain

19   an experts opinion."  Plaintiff again cites case law concerning the seriousness of a prisoner's

20   medical need and concludes that there are genuine issues of material fact that can only be decided

21   by a jury.

22           D.  Discussion

23           "A scintilla of evidence or evidence that is merely colorable or not significantly

24   probative does not present a genuine issue of material fact" precluding summary judgment.

25   Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  See also Summers v. A.

26   Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  On summary judgment the court is

not to weigh the evidence or determine the truth of the matters asserted but must only determine

whether there is a genuine issue appropriately resolved by trial.  See Summers, 127 F.3d at 1152.

Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a

reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment

motion.  See Addisu, 198 F.3d at 1134.

Here, it is undisputed that plaintiff presented a serious medical need in February

2002 when he sought treatment for his injured foot.  It is undisputed that plaintiff was examined

and treated, first by a nurse and an MTA, and then by defendant Mericle.  Plaintiff's evidence

does not establish the existence of a genuine issue of material fact with regard to whether

defendant Mericle entered an order for a follow-up appointment in ten days.  It is undisputed that

defendant Mericle's working diagnosis of a contused or not obviously displaced broken toe

proved to be incorrect.  Plaintiff has not established the existence of a genuine issue of material

fact with regard to defendant Mericle's evidence that he would have ordered an x-ray when he

found the condition of plaintiff's foot largely unchanged ten days later.  It is undisputed that

defendant Mericle was transferred to a different assignment prior to February 25, 2002, that

plaintiff was no longer defendant Mericle's patient on that date, and that defendant Mericle was

therefore unable to examine plaintiff and discover that his initial diagnosis was incorrect.

Defendant Mericle contends that his examination and treatment of plaintiff on

February 15, 2002, met the standard of care for a generalist physician, that it is a matter of

speculation to say that the outcome would have been different but for the delay attributable to his

decision to follow up in ten days, and that it is even more speculative to say that the outcome

would have been different but for subsequent delays attributable to others after the ten-day delay

caused by defendant Mericle.  Plaintiff's evidence of an institutional finding of staff misconduct

may support an inference that defendant Mericle was negligent in failing to order an x-ray on

February 15, 2002, and suggests that he was unprofessional in manner.  Neither the finding of

staff misconduct nor any other evidence offered by plaintiff supports a conclusion that defendant

Mericle acted with the substantial indifference required to support an Eighth Amendment claim of constitutionally inadequate medical care.  The defendant's deliberate indifference is an element essential to plaintiff's constitutional claim.  Plaintiff's complete failure of proof concerning this element requires that summary judgment be entered for defendant Mericle.

The undersigned notes that the parties' evidence contradicts the following allegations in plaintiff's complaint:  plaintiff was injured on January 13, 2002; plaintiff went to the clinic to be seen by a nurse and was told that the doctor was not in; plaintiff repeatedly requested to see the doctor but had to wait three days before he was allowed to see Doctor Mericle; Doctor Mericle, finding only slight swelling and a little discoloration, told plaintiff there was nothing wrong and he would be fine in a couple of days; after plaintiff was taken to an outside hospital for consultation on April 23, 2002, and immediate surgery was recommended, Doctor Mericle continuously deprived plaintiff of proper pain medication and insisted there was nothing wrong with plaintiff's foot; after surgery on June 19, 2002, almost six months after he was injured, plaintiff continued to have difficulty in obtaining proper pain medication and physical therapy for his foot because Doctor Mericle insisted that plaintiff was not in need of pain medication or physical therapy; Doctor Mericle's refusal to provide plaintiff with medical treatment for his foot resulted in further injury and necessitated extensive surgery; Doctor Mericle violated the surgeon's orders.  These allegations led to the court's determination that the complaint states a cognizable claim against defendant Mericle.  It is now evident that defendant Mericle treated plaintiff on a single occasion and had no further involvement in plaintiff's medical care.

III.  Defendant Baron's Motion for Summary Judgment

A.  Defendant's Arguments and Evidence

Defendant Baron seeks summary judgment on the ground that he is entitled to judgment as a matter of law because plaintiff cannot state a constitutional violation against him. Defendant Baron contends that he was never plaintiff's treating physician and was unaware of

plaintiff's claims until plaintiff filed an inmate grievance on March 26, 2002.  Defendant offers

his own declaration, plaintiff's deposition testimony, and plaintiff's March 26, 2002 grievance.

Defendant Baron cites evidence establishing the following facts in addition to

those established by defendant Mericle's evidence:  from June 2001 to February 2002, Doctor

Baron was Chief Medical Officer at High Desert State Prison; according to plaintiff, he

submitted an inmate appeal on March 26, 2002, claiming that Doctor Mericle did not provide

adequate medical treatment for his foot; plaintiff maintains that the March 26, 2002 appeal made

Doctor Baron aware of his complaint against Doctor Mericle; plaintiff has sued Doctor Baron in

his capacity as Chief Medical Officer, a supervisorial position; Doctor Baron never served as a

treating physician for plaintiff at High Desert State Prison; Doctor Baron responded to plaintiff's

March 26, 2002 appeal in writing on April 12, 2002; Doctor Baron partially granted the appeal at

the first level, informing plaintiff that he was approved for a podiatry consult and placed on a

priority list for an appointment, that a request for podiatry consult had already been approved by

the Medical Authorization Committee, and that an appointment was being scheduled; plaintiff

submitted his appeal to the second level on May 2, 2002; Doctor Baron examined plaintiff's foot

briefly on May 22, 2002, then immediately conferred with a podiatrist who also examined

plaintiff's foot that day; plaintiff admits that Doctor Baron did not do anything medically wrong

during his brief examination of plaintiff on May 22, 2002; Doctor Baron also responded in

writing to plaintiff's second-level appeal, granting the appeal in part and noting that plaintiff had

already been examined by podiatrist Dr. Knedgen on April 23, 2002, that Dr. Knedgen had

recommended surgery which was approved by the Medical Authorization Committee, and that

surgery would occur within 30 to 60 days; surgery was performed on plaintiff's foot on June 19,

2002.

Defendant Baron contends that he is entitled to summary judgment on plaintiff's

Eighth Amendment claim because the defendant's alleged action or inaction did not rise to the

level of a constitutional violation.  Defendant Baron argues that he cannot be held liable under a

1  theory of respondeat superior and that plaintiff cannot establish an actual causal link between

2  defendant Baron's actions and the alleged deliberate indifference to plaintiff's serious medical

3  needs.

4      With regard to plaintiff's contention that an x-ray should have been ordered by

5  defendant Mericle, defendant cites the Supreme Court's conclusion in an analogous case in

6  which the prisoner alleged that x-rays of his back should have been ordered:

7      [T]he question whether an X-ray or additional diagnostic
   techniques or forms of treatment is indicated is a classic example
8  of a matter for medical judgment.  A medical decision not to order
   an X-ray, or like measures, does not represent cruel and unusual
9  punishment.  At most it is medical malpractice . . . .

10  Estelle v. Gamble, 429 U.S. 97, 107 (1976).  Defendant Baron asserts that plaintiff cannot

11  establish a violation of his Eighth Amendment rights by either defendant on the basis of

12  defendant Mericle's decision not to order an x-ray and cannot establish any violation by

13  defendant Baron based solely on the theory that he was defendant Mericle's supervisor.

14      Defendant Baron argues that plaintiff cannot establish a causal link between

15  defendant Baron's alleged actions and plaintiff's injury and suffering because by the time

16  plaintiff submitted a grievance on March 26, 2002, plaintiff had been seen by Dr. Watson for a

17  follow-up appointment and an x-ray had been taken.  Defendant Baron's only involvement in the

18  case consisted of reviewing and responding to plaintiff's grievance at two levels and informing

19  plaintiff of the authorization and scheduling for surgery.  These actions do not constitute the

20  unnecessary and wanton infliction of pain required to establish deliberate indifference.

21      Defendant Baron argues that, if the court determines that plaintiff has stated a

22  constitutional violation by defendant Baron, the defendant is entitled to qualified immunity for

23  his alleged action or inaction.

24      Upon consideration of defendant Baron's arguments and evidence, the

25  undersigned finds that the defendant has carried his initial burden of pointing to evidence that

26  demonstrates there is no genuine issue as to any material fact concerning defendant Baron's

involvement in plaintiff's medical care.  Defendant Baron's evidence supports his contention that he is entitled to judgment as a matter of law on plaintiff's Eight Amendment claim.  Because defendant Baron has borne his initial responsibility, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact.

B.  Plaintiff's Arguments and Evidence

Plaintiff contends that defendant Baron is not entitled to summary judgment because he was "deliberate and indifferent in treating plaintiff" and there are triable issues of material fact.  Although plaintiff refers to a memorandum of points and authorities, he has not submitted such a document.

Plaintiff has not reproduced the facts contained in defendant Baron's statement of undisputed facts and admitted or denied those facts.  Local Rule 56-260(b).  Nor has he offered a separate list of disputed facts.  Plaintiff has offered only a list of facts he describes as undisputed.  Each such fact is supported solely by citation to plaintiff's attached declaration.  Plaintiff asserts that defendant Baron failed to intervene when notified of defendant Mericle's refusal to treat plaintiff, treated plaintiff with deliberate indifference when he failed to order immediate treatment of plaintiff's right foot, ignored plaintiff's grievances, and made plaintiff wait five months for surgery when he knew plaintiff was in excruciating pain.

In his attached declaration, plaintiff offers legal conclusions and complains about the discovery process.  Plaintiff states that defendant Baron made him "sit in excruciating pain for approximately five months" before he was given surgery.  He asserts that he injured his foot on January 11, 2002, and was made to wait until June 19, 2002, for surgery.  Plaintiff does not cite to any portions of the record in support of his assertions.

C.  Defendant Baron's Reply

Defendant Baron notes that plaintiff has failed to present any significant probative evidence tending to support his claim, has failed to dispute any fact contained in defendant's statement of undisputed facts, has presented a statement of undisputed facts based entirely on an

1  attached declaration that is legally inadmissible because it calls for speculation and asserts legal

2  conclusions, and has failed to provide a memorandum of points and authorities.

3       D. Discussion

4              There is no evidence on the record that defendant Baron was aware of a complaint

5  concerning plaintiff's medical care prior to March 26, 2002.  The appeal submitted on March 26,

6  2002, concerned the delay in being seen by a podiatrist after Dr. Watson made a referral.  In

7  response to the appeal, Dr. Watson interviewed plaintiff and then requested that the committee

8  consider sending plaintiff out to the podiatrist instead of making him wait for the next monthly

9  on-site consultation.  The request was approved.  On April 12, 2002, the appeal was partially

10  granted by Dr. Watson and defendant Baron, and plaintiff was informed that an appointment with

11  the podiatrist was being scheduled.  On May 2, 2002, plaintiff submitted this appeal to the

12  second formal level because he wanted to know the surgery date.  The appeal was partially

13  granted by defendant Baron on May 23, 2002, after a brief examination of plaintiff's foot on May

14  22, 2002, and consultation with the podiatrist.  Before defendant Baron saw plaintiff, plaintiff

15  had been seen by the podiatrist on April 23, 2002, the podiatrist had recommended surgery,

16  surgery had been approved by the committee, and surgery was scheduled to occur within 30 to 60

17  days.  (Def. Baron's Mot. to Dismiss, Decl. of Danette Jackson, Ex. A-1; Def. Baron's Mot. for

18  Summ. J., Baron Decl.; Jackson Dep. at 62-63.)

19              On May 1, 2002, one day prior to submitting his first grievance to the second

20  level, plaintiff submitted a new grievance concerning his dissatisfaction with the medical care

21  provided by defendant Mericle.  Plaintiff requested money damages and disciplinary action.

22  Plaintiff was interviewed by Dr. Roche on May 16, 2002.  Defendant Baron partially granted the

23  second grievance at the first formal level on May 22, 2002.  (Def. Baron's Mot. to Dismiss, Decl.

24  of Danette Jackson, Ex. A-2.)

25              Plaintiff has not offered evidence that defendant Baron received notice of

26  defendant Mericle's alleged refusal to treat plaintiff prior to May 1, 2002.  By February 25, 2002,

1   plaintiff was no longer defendant Mericle's patient.  On this record, there is no evidence that

2   defendant Baron had an opportunity to intervene in defendant Mericle's alleged refusal to treat

3   plaintiff.  The evidence concerning defendant Baron's responses to plaintiff's two grievances

4   does not show that defendant Baron failed to order immediate treatment of plaintiff's right foot,

5   ignored plaintiff's grievances, or made plaintiff wait five months for surgery.  Plaintiff has not

6   demonstrated the existence of a disputed issue of fact concerning defendant Baron's actions, and

7   those actions do not reflect deliberate indifference to a serious medical need.  Defendant Baron is

8   therefore entitled to judgment in his favor.

9              Accordingly, IT IS HEREBY RECOMMENDED that:

10              1.  The motions for summary judgment filed by defendant Mericle on October 12,

11   2004, and by defendant Baron on October 29, 2004, be granted; and

12              2.  This action be dismissed.

13              These findings and recommendations are submitted to the United States District

14   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

15   days after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  A document containing objections

17   should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply

18   to objections shall be served and filed within ten days after service of the objections.  The parties

19   are advised that failure to file objections within the specified time may, under certain

20   circumstances, waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951

21   F.2d 1153 (9th Cir. 1991).

22   DATED: July 18, 2005.

23

24                       _____

                          DALE A. DROZD

                          UNITED STATES MAGISTRATE JUDGE

25   DAD:13
     jack2756.57

26